May it please the Court, my name is Jeff Terry. I represent Appellant Thomas Nehrlich. Also in the courtroom is Patrick Quinn, trial counsel in the underlying tax court proceeding. In 1995, Appellant Nehrlich was a member of a three-person partnership called JTA. The Commissioner of Internal Revenue audited JTA for the taxable year 1995 using the TEFRA audit proceedings. This is the Tax Equity and Fiscal Responsibility Act of 1982 provisions that provide for audits of large partnerships. The Commissioner disallowed a charitable contribution and issued what's called a Notice of Final Partnership Administrative Adjustment called an FPAW. This was issued in 2000, and it was mailed to a gentleman named Mr. Wieckowski. In the record, he was the person that signed the tax return and checked a box indicating he was the tax matters partner of this three-person partnership. By the time this FPAW was issued, however, Mr. Wieckowski had moved on. This small partnership had become a corporation. And none of the other two partners had any idea what was going on. Mr. Nehrlich, the Petitioner, in this case the Appellant, did not receive a copy of the FPAW. His first knowledge of this was the evidence sufficient that the notice was mailed to Mr. Nehrlich? Your Honor, there is a tax court. Just consider that. I believe the tax court was apprised of the status. The party stipulated to the facts that the Commissioner could not prove that Mr. Nehrlich received the FPAW. What's in the record is interesting. There is a certified record of mailing to the tax matters partner, Mr. Wieckowski. And it's Mr. Nehrlich's address correctly on there? It has ñ well, that particular certification has Mr. Wieckowski with four different addresses. And it's got an initial and a seal indicating that, in fact, it's an official record of the Commissioner. There is a copy of an FPAW with Mr. Nehrlich's address on it, and the Commissioner has produced a computer-generated copy of a certified mailing list. But that particular document that's in the record is not stamped. It does not have a signature on it. It appears to be a document that is just generated from a computer. It's different. When you look at the record, it's different from the certified record for the ñ Well, now, did you challenge the mailing as such? Well ñ Or did you let it go by with these electrically certified documents? The Petitioner challenged the underlying liability on the basis that Tefla was inappropriate. No, no, not that. The mailing itself. Well, the issue was raised at the collection due process hearing, that the taxpayer did not receive notice of the ñ Did not receive. But the mailing itself, was that ever challenged? I don't know that it was specifically challenged, but in the record, Your Honor, there is the evidence of what was provided by the Commissioner that shows that the mailings to the tax matters partner was, in fact, stamped as certified, and the document that shows it was mailed to Mr. Nerlich was not. So that was ñ To just ñ so these are in the record. It's stipulated. But there seems to be some difference. You don't have a certified piece of paper that said it went to Mr. Nerlich, right? That's correct. But is there evidence in the ordinary course that it was mailed and therefore presumed received? In other words, is there a ñ is there a legal sort of presumption there that it was mailed in the ordinary course, or is there no evidence on that? I don't believe there is evidence of that, Your Honor. Exhibit 3J is what was produced in connection with the mailing to the tax matters partner. That has an official date on it. It also has an official stamp on it with an initial. The similar document that was produced in connection with Mr. Nerlich, which is dated 11-13-2000, which is the same date as a notice of final partnership administration addressed to Mr. Nerlich, does not have that same stamp, does not have that same date, does not have an initial. The question is whether it needs to have that certification in order to be legitimate in terms of being mailed in the ordinary course if it's in your government records. Your Honor, I'm not sure what the answer to that question is. But this case does involve an issue of due process. And under the legal authority cited by the tax court, where the Petitioner does not have notice from a 90-day notice of deficiency, they're entitled to challenge the underlying tax liability at a time. Yes, but it isn't necessary, is it, that there be actual receipt of the mailing All that is required is that it was mailed. I think that that is probably correct, Your Honor, under the applicable law. But the evidence So what would you want us to do? In other words, if we sent this back to the tax court, we'd still have these two stipulated documents, correct? Yes, Your Honor. Then I assume that the IRS would bring in their people that say when they generate these documents with the people's name and address, that in the ordinary course they deposit them in the U.S. mail. And that's as far as they can go. And then what would happen? I don't think that would be the end of it, because the reason we're here is because of the determination made by the Commissioner at the due process hearing and which was upheld by the tax court, which is that this particular partnership was correctly classified as a TEFRA partnership. It's our contention that this partnership, this three-person partnership, should have been viewed as Let's just say, I mean, if we disagreed with you on that, then if it went back on the notice issue and that it were determined that he didn't get notice, which was unfair, or that there's not enough evidence that he should have received notice, is that a legal issue that you would then re-argue? I think the note, if we were to set aside what's at heart here, the core of this case, which is whether it's TEFRA or not, and just look at the purely noticing issue, I think that it's a fairness question that, that if the government can show that they in fact did mail it, then they probably will prevail on it. But I don't believe they can prove it with the evidence. The evidence they have is deficient in the sense that what was mailed to the tax matters partner does have a stamp, does have an initial, and what was mailed to Mr. Nurlich does not. It's just a simple, it's Exhibit SJ, a compendum of exhibits, and it's just simply a computer printout. They have stipulated that they cannot prove that Mr. Nurlich had, did in fact receive notice, and Mr. Nurlich has testified he did not receive notice. In fact, the reason we're here is because there was a lien that was in fact recorded against him, and that's the first notice he had of this tax liability. So would you just, and I just want to make sure I understand, because on this document I'm looking at that says Date FPAA Mail to Tax Matters Person is 1018, and then there's Mr. Nurlich's name on that document. That's 4J. I'm looking at 5. 4J is the actual copy of the notice. It's a copy of the notice itself. But 5J is the copy of the certified mailing list, which does not appear to be certified. And 3J is a certified mailing list to the tax matters partner for different addresses, which is certified. It appears to have a stamp and an initial. Kennedy. Was it stipulated to be a certified mailing list? No, it wasn't, Your Honor. But the issue here, the crux of this case, is really whether or not the Commissioner and the tax court correctly viewed this as a TEFRA proceeding as opposed to the other. Suppose you were to lose on that question. Is there still a reason to determine the constitutional question of the mailing? Your Honor, I think that under the applicable law, to the extent that there's been no proof of mailing, that it is something that needs to be determined, needs to be adjudicated. Okay. But what, more precisely, if it were determined that the IRS was correct, just assuming for talking purposes that they were correct in their facial determination, and we were to make that determination, if we remanded because there might not be enough on whether your client actually received or they mailed it or have enough evidence of mailing, where would that get you? So you're saying that the IRS was wrong to make that determination? Or were there some other issues? Or what would he then be able to go back in and do if there were a legal determination that the determination made by the IRS is actually correct? Your Honor, the actual determination goes back several years, so I don't believe we'd be able to vacate the underlying decision that gave rise to this adjustment. I think that would be a problem for this taxpayer. I think he's sort of in limbo on this issue. So in other words, I guess the short answer is sending it back on the notice question doesn't help him if the legal question doesn't come out in his favor. Is that right? Not necessarily, Your Honor. I wouldn't necessarily agree with that. I do believe that notice is a requisite in order to collect this tax. Well, isn't it correct that if he didn't get notice, he never had the opportunity to question the TEFRA audit? That's correct, Your Honor. And so the notice provision is critical, as well as the – your main point on the That it's not a TEFRA partnership. That's correct, Your Honor. It is critical. And without that notice, he didn't have an opportunity to challenge. So you're just saying he might have an uphill battle if that determination is made, but he still would have a chance to make his argument? Yes. I believe that it's a question of fact that the Court has to look at, whether or not he did receive notice. And I believe the facts in this case are that the Commissioner cannot prove that he did receive notice or that they followed their own protocol in sending out notice. Your time is more than up. Do you want to take a minute or two on the substantive question? Yes, Your Honor. Thank you very much. I would like to do that. The tax court recognizes in its opinion that this really boils down to whether or not one of two particular tests are satisfying for TEFRA. There's the number of partners, whether 10 or less, which everyone concedes we have here. And the other test is – If there's a clear mistake on the face of the returns – Yes, Your Honor. Is the government required to take that into account, or can it take the form literally or must it take the form literally? Well, the case law that's cited by all the parties in this case and looked to by the tax court makes it very clear that it's not just simply a quick look, but it's they use the term examination of the tax filing, the return, and the K-1s to assess whether or not the partnership items have been distributed in substantially similar shares, that they meet the same share test. In this case, when you look at the tax return, when you look at the K-1s, it's common sense. It's simple. It jumps right out at you. There's no need to look beyond and look at the agreement or do any research. It says very clearly that there's a health care premium that's being paid on behalf of the taxpayer, and that health care premium is identified in both locations, where it's called a guaranteed payment, which the tax court recognizes is not a partnership item, which gets us out of TEFRA. And it's also identified as a health care premium where it's also stated under other deductions. Just the mere fact of using the word other deductions doesn't make something a partnership item, and that's the critical examination that the commissioner did not perform and which the tax court, we believe, is incorrect in upholding, that they did not look at that return and did not assess what that meant. How is the commissioner able to, from the face of the return, to say that there were not two premiums? Because it's identified in both places with statements and it refers to the same item. It's impossible for it to be two different health care premiums for the same partner. It's the same item. It's repeated in two places and it's identified as health care premium. Is there a statement accompanying the guaranteed payments to partner under number 5 on the K-1? I'm sorry, Your Honor. Could you repeat that? Yes. On the K-1 form, you've got the same number twice. One of them says C statement and the other one doesn't say that. So I'm just trying to understand if that makes any difference. The tax return line, I believe it's ñ I just had it here marked. I apologize. I believe if you examine the tax return, it does ñ here it is. It's the schedule at the end of the tax return. It appears to be page 10. Under guaranteed payments, there's statement 5. It's referred to and described as health insurance premiums. Look to Schedule K, line 5, and then down below that under Schedule K, other deductions, again it says prescription health care insurance premiums. That's on the tax return for the partnership. Correct. So you're saying that's a red alert that that can't be in both places? Yes, Your Honor. It wouldn't make sense. It would be an impossibility. You're not going to have a health care premium duplicated like this. With identical cost. I'm sorry, Your Honor? With identical cost. With identical cost. It's the same. And the actual K-1 makes reference to the statements. Right. So it's our contention, Your Honor, that the Commissioner looking at the issue of TEFRA, selected TEFRA because the tax return had a check marked for tax matters partner, but there's no election to treat this as a TEFRA partnership, and the Commissioner recognizes that. And so we believe, and it's our contention, that this is a pretext going back to the return and looking through it line by line, seeing if there's some reasonable basis. There's no authority either way, is there, on whether if there's a clear error apparent on the face of the return that the government bears the responsibility for classifying the statements other than the way they appear on the face? Well, in this case, there is, Your Honor. The law was changed in 1997 because there was that risk that the government misidentified the deduction and chose the wrong audit path. Instead of using TEFRA, they chose to issue a 90-day deficiency notice and go after an individual. The government would be – would have a problem. If they waited too long, the statute of limitations could expire and they couldn't go back and fix it. In 1997, that was fixed, so that risk is not there anymore for the government. But in 1995, if the government chose the wrong audit path, they made a major mistake and they would not be able to go back if the statute had expired and redo it. And that's what happened in this case. This is a 1995 audit. They selected TEFRA proceeding because of the – we believe because of the checkup behind the TMP on the return, and after the fact went back and tried to justify that by saying, well, there's this other deduction. If the government literally applies what it says, then they'd be protected, I assume. And if they said, well, look, these people seem to have made a mistake, and they were wrong about that, then they wouldn't be able to tax. I agree with that, Your Honor. Roberts. Should the government have to make its own evaluation and determine whether the taxpayer made a mistake? I think the government bears the burden of determining in 1995 which audit process to select. Right. But if they rely on exactly what the taxpayer said. Well, it's our position that looking at this return, it's clear on its face that a health care premium is not a partnership item. The case law, or at least the regulations at the time, distinguish between a partnership item, which is something that should be handled at the partnership level, versus an item that should be handled at the partner level. And these health care premiums are handled at the partner level because different partners are going to have different premiums based on their health care status. It's on the face of this document that this is clearly not a partnership item, and the Commissioner made the mistake in selecting the effort. Well, at first the taxpayer made a mistake. Yeah. Well, the taxpayer put it in two places. Yeah. But the taxpayer was clear about what it was. It's clear what it is. There's no question what it's reporting. Well, doesn't that get the government into the position of having to really consider every return and see whether the taxpayer has made mistakes on it? I don't think the government should be imposed the burden to determine whether there's a mistake. But the government is required to look at the items to determine whether or not you've got the same share test being satisfied for purposes of a small partnership. The small partnership exception is recognized because this is an arcane and burdensome area, and it's designed for a unified view of a complicated, large partnership. But when you've got a small family-run business or a couple of people that are treating it like co-owners, then the government has this small partnership exception, and that's the burden the commissioner bears in looking at this, is to determine which way do we go in making an audit. I mean, I guess I'm having some trouble wondering whether is it possible that you would have a situation where, for whatever reason, some of them would be a partnership item and some would not, and therefore you would split them? That's a good question, Your Honor. In other words, like there's 25,000 and it's 12 and 12? I don't know. I think under the law and under the case law, under the Harrell case and the Zitron case, if you have any items that are partnership items that are not distributed according to the same shares as the partner's interest, then you would be flunked out on the same share test. You would not meet the same share test. So, therefore, if you're a partnership item. But is that possible with a health insurance payment for the partnership? Could it be split so that part of the health insurance premium is in one category and half is in the other? I don't know how that would be practical, especially in this case when we have a specific amount that's identified as a health care premium. It's a specific amount for the individual, and it's just that. But how do you know that from the tax return? In other words, if I look at the tax, I'm just trying to understand the tax logic underlying this. If I look at the tax return, I see it appears in two places. But it's also identified. As a health premium. And it's identified for that particular partner. All right. But where is it identified as only 12 as opposed to 25? Well, each K-1 has the specific. Right. But on the K-1, oh, I see. Because you've got on the K-1 it appears in the same way. It's duplicated in the K-1. So that doesn't help you. In other words, you're still back to it's, you know, 2,400 per person on your K-1 that you get from the K-1, and this is the aggregate amount, correct? The question is, is the health care premium that's been split into two categories, is that a partnership item or not? And it's our view that under the applicable law, it's not. And that was something that should have been obvious to anyone examining the return. And that's what the Commissioner is required to do in deciding whether to elect TEFRA, which is a complicated and arcane. Does the problem stem from the K-1? The problem stems from selecting TEFRA audit procedures for this small partnership. That's where the problem stems. Thank you. Let me ask one question. I think we're trying to get clear. This kind of health care premium, is it always the kind of payment that is excluded? It's my understanding that when it's a health care premium for an individual partner, then it is always excluded. It's never a health care premiums are never a partnership item. Not when you have three partners and you're reporting the premiums for each partner. So, yes, never. Thank you. Thank you very much. May it please the Court, Robert Bramman from the Tax Division of the United States Department of Justice. First, I'd like to address the issue about a notice or whether the certified mailing list satisfies the government's burden of showing that it properly mailed the FPA. And I think this matter is resolved by the stipulation of facts of paragraph 24, which is on page 19 of the IRS certified mailing list, showing that a copy of the FPA concerning JTA with respect to taxable year 1995 was mailed to petitioner's last known address on November 13, 2000. It's true that there are two certified mailing lists. One has the post office stamp of receipt, and that's the first one from October 18th, I think, when the notices were mailed to the tax matters partner at various addresses. The second one shows the mailing to the three partners at their addresses on return. It doesn't have the postal office stamp, but it's been stipulated by the parties to be what it purports to be. With that, let me move on for just a minute to the substantive matter of whether the auditor should have realized from looking at the return before conducting the audit, just at the point when he was deciding which manner of audit to use and notifying the parties that it was, as Mr. Cherry said, simple common sense that the health insurance premiums were guaranteed payments. I mean, really, it could be the same thing split in two reported twice, or it could be something, you know, double reported. But it was reported both as another deduction and as a guaranteed payment. But it's not obvious to me that a health insurance premium is always a guaranteed payment. It hasn't been briefed by the parties. It's not in the regulations that I've seen or anywhere in the excerpts of record. I would think that health insurance premiums could be a guaranteed payment, or they could be another deduction depending upon something that's not in the record. It could be both? It could be both. It could be. Do we know that from the tax code that they could be both? We don't know from any part of the code that's been cited in the briefing. I don't know from any part of the code that I'm familiar with. I don't see it anywhere in the record. I would think the auditor might look at this and say, I would need to see something else. I would need to see a more expansive statement or some evidence of what kind of health insurance premium it is. I mean, the statements don't say health insurance premiums for individual partners, you know, based on their life, their age or life expectancy. It just says, just as page 34 of the excerpt of record, health insurance premiums. That's all it says. And that's all the auditor had. Well, I guess it's kind of hard to know whether you look at this at the face of it unless you know what the underlying tax code is. I mean, otherwise, it doesn't do any good to look at all. You just say, well, here it is. But it appears in two places, and I guess the question is if you look at that, do you say this is an obvious mistake? I don't need to go further to have it in two places. It isn't right, so there must be a mistake here. Is that obvious from the? It's not obvious to me that it's a mistake. Well, it might not be obvious to you, but I'm talking about, or me even, or anyone else, but I'm talking about the tax people. So why wouldn't it be obvious? I'm trying to understand the rationale. I don't know that it would be obvious. I mean, the parties haven't cited an Internal Revenue Code section that says insurance premiums are guaranteed payments or insurance premiums are something else. I think it could be either, depending upon something else, what kind of health insurance it is now. Could it be both? Something in the partnership agreement. I mean, could it be both? That's the question I asked them, and I don't think I have a tax code answer yet. I don't know. It could be both, but I can't say. I don't know that it couldn't be both. But what Mr. Terry's argument. Well, you know, like if you had a tax partner, maybe a regular, if you had $100,000 on your W, you had $101,000.22 on your W-2, and then you also have it on a Schedule C, that might say, well, you know, something's wrong here. You've mixed them up or you've double reported them. It's kind of obvious. So I'm wondering, is there a similar code provision you'd look to for health premiums? So you'd look at this and say, well, it's either a duplicate, that would be wrong, or, well, it could be both. So I'll just take it at face value. I don't know of a code section that says health insurance premiums for a partnership are guaranteed payments. And the taxpayers have not cited the Court to one. As far as it is an obvious mistake on the face of the forms. Then is it the government's position that that doesn't matter? Yes. Although I would agree that we haven't cited the Court. I haven't seen any cases that say that. There are a few tax court cases here, reviewed cases, that say that the auditor was not obligated to look beyond the face of the return. I'm not really sure where the return faces or where it ends, if it's a 25-page return. In those cases, the auditor was not required to go beyond the return into the partnership agreements. Here, the face of the return seems to have some indication that the health insurance premiums were guaranteed payments, but also some indication that the health insurance premiums were other deductions. I'm not sure that from the face of the return you can resolve that. What we have, I guess, is nobody can tell us what should be obvious to an auditor. You don't know what it means, looking at it. But what does an auditor know? I mean, I assume an auditor knows whether these health insurance premiums are classified as guaranteed payments. Tell us. You don't know. I think we can assume the auditor knows what's on the return in front of him and what's in the Internal Revenue Code and regulations. Well, if he knows that, we don't know. And you don't know, apparently. I would assume if there was a regulation or a code section on point, that the taxpayers would have cited the court to it. Well, let's take it. I don't know much about tax law or returns. I just have an accountant make that my return and I sign it. I don't even know. I know very little about it. But even I, I think, would know if there was a health premium in one category and a health insurance premium in the other.  I think it's a very simple number. And the one is guaranteed and the other isn't, that there must be something wrong. I think the return suggests an error, but it's not obvious which one is right and which one is wrong. And the auditor certainly could have made a guess as to which one was right and wrong, maybe even an educated guess. But the government shouldn't be, shouldn't have that responsibility of looking through the return. And mind you, this is not the end of the audit. This is before the audit starts. Correcting errors in the return before the audit starts and selecting a different method. That would depend on what the rule is. Somewhere, somehow, somebody must have known that this could be a guaranteed payment, that a health insurance payment falls under guaranteed payment. I assume the auditor knows whether that's correct or not. I wouldn't assume, no. I mean, it's not obvious from the return or anything in the record before the court. I'm not sure what, how the auditor should have known. I mean, I guess the tax court says, well, even though there might have been a probability of a mistake, you couldn't figure it out. It wasn't up to him to figure it out. I'm not exactly sure if you figure it out because you know the tax law in your head or if that means figure it out, you need to go to some underlying document. I think you need to go to some underlying document. Well, suppose they put down guaranteed payment, medical insurance, and you're not allowed to do that. The auditor wouldn't do anything about that? I don't know. I know this is the beginning of the audit. The auditor's responsibility for fixing errors in the return before starting the audit, when he's just selecting the methods, should be fairly limited. I want to make one more point before I, or two more points before I run out of time. Mr. Terry talked about the 1997 amendment to this part of the code. The audit was for the 1995 year. It was conducted in 2000 after this 1997 amendment. But the amendment was not retroactive. The amendment. He said that, that that amendment didn't apply. Okay. So the 1995 audit was still to be done under this law. So the auditor still did the right thing under the prevailing law for the 1995 audit, I would say. One more point I want to make to set this in context. The issue is only which form of audit to use. I mean, if the auditor had made this correction and made a guess as to what it should have been instead and just concluded that the partnership passed the same share test, he still would have audited the partnership and he still would have sent notices by mail to the partners at the same addresses, the addresses he had. It just would have been that the partnership was audited under individual rules instead of the unified rules. So what Mr. Nerlich, you know, purportedly lost under this, because the IRS didn't fix the return, the error on the partnership return, was only having his tax items, you know, adjusted individually instead of in a unified manner with the other partners. Thank you, counsel. Thank you. I guess we'll give you two minutes. Thank you very much, Your Honor. I would like to point the Court's attention to the stipulation of facts, item number 23, which indicates that the Respondent was unable to locate a complete copy of the original FPAW that was mailed to the one? The original FPAW, the Final Partnership Administration Adjustment, Notice of Administration Adjustment. That's item number 23 in the stipulation of facts. That deals with the issue of mutus. The reason we're here, Your Honor, is because the appellant did not have the opportunity to challenge or to address any mistakes in the return or even bring up the return. The reason we're here is because his first notice of this liability was from a lien that was recorded against him and filed in the county where he resides. This is a question of fairness as well as a question of law and complying with the specific dictates of the law. So there are two reasons why we believe the Court should overrule the tax court on this issue. But I'd also like to address the mailing issue. It's our understanding that the IRS has guidelines as to what it must do internally in terms of mailing, and we believe that it didn't follow its own guidelines, its own. Where's that argued? I believe that that was in the tax court proceeding. One other issue that I want to raise as well. Is that argued on appeal as well? The appeal focuses primarily on the TEFRA versus small partnership issue. But it does come up in the sense that we're citing to the record, and in the record there was back and forth over what was actually provided to the taxpayer. But I'd also like to point out to the Court that Internal Revenue Code 213, Section 213, has to do with insurance premium deductions being allowable only to individuals as opposed to partnership items. I guess the tax court said the regulation tells the Commissioner which items to look at. One of them is partnership deduction. He looked at it. Other deductions, end of story. Well. The question is what's wrong with that logic? What's wrong with that is it does have to look at the items to determine whether they're partnership items as opposed to nonpartnership items. And Internal Revenue Code Section 213 does address the issue of insurance premiums as being deductible by individuals and not by the partnership. An auditor, an experienced auditor who understands the tax code and understands the distinction between partnership items and nonpartnership items would have recognized that these insurance premiums being described as guaranteed payments and other deductions on the same page was referring to the same item and would have understood that those are nonpartnership items. But in order to do that, you'd have to go beyond the face of the return. You'd have to understand. The regulation, the K-1 and prior tax returns. The case law requires that they examine the return, including the schedules and the K-1s. And the examination process, I believe, assumes that there's some basic knowledge of tax law and some basic understanding of what a partnership item is versus a nonpartnership  We're not suggesting that the auditor has to go and look at anything outside of the tax return, but they do bring with them some modicum of understanding of basic tax law. And a health care premium is specifically cited in the Internal Revenue Code and is something that auditors or individuals that have experience in this area are going to understand are not partnership items. That's something that they should start with. So that's why we believe the tax court's logic on this is erroneous. Thank you, counsel. Thank you very much. The case just argued will be submitted.
judges: Reinhardt, McKeown, Archer